1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

RITA DOS SANTOS, ANTHONY
CELLUCCI, individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

FOSTER GARVEY, ROBERT
C.WEAVER, SAMUEL KAUFFMAN,
SARA SANDFORD, and GARY TOBER,

Defendants.

Case No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Putative Class Representative Rita Dos Santos ("Dos Santos") and Anthony Cellucci

("Cellucci") on behalf of themselves and all others similarly situated ("Plaintiffs" or "Class

Representatives") through their undersigned attorneys, hereby bring this this action against the

defendants named herein. The allegations are based on Plaintiffs' personal knowledge as to

their own acts, and on information and belief as to all other matters, except for the allegations

sounding in fraud, acts supported by documentary evidence, and such information and belief

having been informed by the investigation conducted by Plaintiffs' counsel.

CLASS ACTION COMPLAINT - 1

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

1      1.    Numerous other defendants have been named in a Multi-District Litigation
2
which is pending Federal District Court in Massachusetts, In Re TelexFree, MDL No. 4:14-
3
md-2566-TSH (hereinafter, "MDL Defendants"). The Fifth Consolidated Amended Complaint
4
for MDL No. 4:14-md-2566-TSH (Doc. 1186) is incorporated by reference. By way of
5
background, Plaintiffs had originally added Defendants Garvey Schubert (now Foster Garvey)
6
into MDL No. 4:14-md-2566-TSH in the Fourth Consolidated Amended Complaint and
7
subsequently filed a Fifth Amended Complaint. Each have been dismissed as the District Court
8
of Massachusetts found that it did not have personal jurisdiction over these Defendants. As
9
such, Plaintiffs have filed the instant Complaint in this Court, which does have personal
10
jurisdiction over the matter. It is important that this Court issue summons prior to the inevitable
11
transfer, as the MDL Transferee Court lacks the ability to do so, and Plaintiffs must and will
12
perfect service prior to transfer.
13
14      2.    Plaintiffs have included background information herein regarding other MDL
15
Defendants and Third Parties for context and ease of reference and also because many of the
16
actions of Defendants Foster Garvey, Robert Weaver, Sara Sandford, Samuel Kauffman, and
17
Gary Tober are intertwined and related with those of other parties. The evidence supporting
18
this Complaint includes:
19
20          (a) review and analysis of documents obtained in October 2019 from the
21              Bankruptcy Trustee in the TelexFree bankruptcy proceedings;
22
23
24
CLASS ACTION COMPLAINT - 2                    BRANSTETTER, STRANCH & JENNINGS, PLLC
                                              703 SOUTH 8TH STREET
                                              LAS VEGAS, NV 89101
                                              TELEPHONE: 725-235-9750

(b) subsequent interviews with TelexFree CPA and CFO Joseph Craft and review and analysis of documents provided by Mr. Craft;

(c) review of various newly filed public records associated with TelexFree, its control persons, and its properties including recent SEC guilty pleas; and

(d) expert analysis.

## I.    OVERVIEW

3.    This case stems from Foster Garvey, Robert Weaver, Sara Sandford, Samuel Kauffman, and Gary Tober's aiding and abetting one of the biggest pyramid and Ponzi schemes in history. TelexFree, Inc., TelexFree LLC, TelexFree Financial, Inc., and their related entities, insiders and associates (collectively "TelexFree") purported to be in the sale of long-distance telephone business. In reality, TelexFree had virtually no income from its purported business. Instead, it sold "memberships" to its unsophisticated victims falsely promising a guaranteed passive return. The resale of the Ad Central membership plans was at the heart of the pyramid scheme.

4.    TelexFree falsely represented that it had developed cutting edge technology. TelexFree targeted vulnerable individuals in immigrant communities who spoke English as a second language, religious communities, and the uneducated, among others. To build trust and expand its market, TelexFree encouraged individual participants to target family members and friends.

CLASS ACTION COMPLAINT - 3

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

5.      Specifically, TelexFree held itself out as a competitor of Skype-like long-distance calling plans. TelexFree sold a monthly unlimited calling plan called 99TelexFree Voice. For $49.90 a month the buyer received unlimited international calling over TelexFree's voice over internet system ("VOIP").

6.      TelexFree held itself out as a multilevel marketing or "MLM" enterprise. In addition to its 99TelexFree Voice product, TelexFree also invited the public to purchase "memberships" which purported to allow an individual to buy and resell 99TelexFree Voice to others. These were falsely presented as a lucrative business opportunity which would provide guaranteed passive returns.

7.      Membership cost $50. Once a member, an individual could buy two types of packages. For $289, the member received an ADCENTRAL kit which contained ten (10) one-month 99TelexFree Voice products. For $1,375, members could purchase an ADCENTRAL FAMILY membership kit which was equivalent to five (5) ADCENTRAL packages. TelexFree openly and unlawfully offered its members a guaranteed passive return.

8.      While each one-month subscription was ostensibly for resale, members were not required to sell them to receive a return. For example, if the member who purchased an individual ADCENTRAL kit posted one copy of an advertisement provided by TelexFree on the internet each day for one week, TelexFree would "buy back" any unsold VOIP plan for $20. The work required to post the ads was minimal – it could be accomplished in a few minutes – and each ADCENTRAL kit allowed a member to do this for one year.

CLASS ACTION COMPLAINT - 4

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

9.      If a member who purchased an ADCENTRAL FAMILY kit posted five advertisements per day for one week, TelexFree would "buy back" any unsold VOIP plans for $100. Thus, as TelexFree emphasized on its website, in its promotional materials, and at its "extravaganzas" held around the world, members were guaranteed a return on their investment of over 200% even if they never sold a single one-month subscription of 99TelexFree Voice.

10.      TelexFree's website assured its unsophisticated victims that they were guaranteed to make money even if they never sold TelexFree's VOIP product. The website announced:

> Be our promoter
> Earn money doing announcements on Internet!
> Through a ADCENTRAL, that you geot [sic] for the amount of US $299 (annually).
> The promoter will receive US$20 each week that makes 7 different announcements in websites of free announcements online, from Monday to Sunday. All in a way fast, easy, and standardized in your virtual office (BO) TelexFree.
> This will be for the 52 weeks of the year, of your contract, then see the situation:
> 52  eeks x $20 (Putting the 7 announcements) = $1,040 in the year.

11.      This is what TelexFree's victims signed up for. A member could buy as many of these packages as they wanted and were encouraged to do so by TelexFree. In fact, however, contrary to TelexFree's false descriptions of its business as a telecommunications company, virtually all of its revenue came from the sales of ADCENTRAL and ADCENTRAL FAMILY memberships – not the sale of telephone services. For example, according to the Massachusetts Secretary of the Commonwealth ("SOC"), in 2012 and 2013, TelexFree had 783,771

CLASS ACTION COMPLAINT - 5

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

investments of either $289.00 or $1,375.00 totaling $880,189,455.32. During the same period the SOC could identify less than one percent (1%) of TelexFree's total income as sales of VOIP.

12.     To a professional banker, or other financial professional, TelexFree's business model had the classic hallmarks of both a Ponzi scheme and a pyramid scheme. In a Ponzi scheme, a business fraudulently persuades victims to invest money in a seemingly legitimate business, often by guaranteeing a return on investment. In reality, the business has no or negligible legitimate operations and provides few or no actual products or services. A pyramid scheme is a variation on a Ponzi scheme. In a pyramid scheme, a participant makes a payment to a multilevel marketing ("MLM") company in return for the right to sell a product and the right to receive rewards for recruiting other participants with little or no relation to the sale of the product to end users. Each new group of recruits forms a tier in a pyramid, hence the name "pyramid scheme."

13.     In each type of scheme, the fraudsters promise to pay – and do pay some – returns and/or commissions to the earlier investors to bring in new investors/participants to ensure a continual flow of new funds. Continual expansion is essential because the business has no meaningful legitimate operations and, therefore, no legitimate income to use to fulfill its promises of payment to its participants. Massive continuing and ever-growing new investment is essential to prolong the scheme. Inevitably, however, the influx of new investments and participants stops or slows such that the promised returns cannot be paid and the scheme collapses. This happened to TelexFree in mid-April 2014.

CLASS ACTION COMPLAINT - 6               BRANSTETTER, STRANCH & JENNINGS, PLLC
                                         703 SOUTH 8TH STREET
                                         LAS VEGAS, NV 89101
                                         TELEPHONE: 725-235-9750

14.     TelexFree operated its unlawful scheme in many countries around the world, including Brazil, Peru, Rwanda, the United Kingdom, Canada, and Haiti, among other places. It operated in the United States from 2012 and through mid- April 2014. During this time, Carlos Wanzeler, James Merrill and the other TelexFree fraudsters swindled well over 700,000 victims, taking them for over $1 billion. TelexFree's operations were headquartered in Marlborough, Massachusetts and a substantial part of the illicit funds obtained by TelexFree worldwide passed through bank accounts in the United States.

15.     The services of banks, payment processors, lawyers, accountants and other professionals are essential to the operation of pyramid/Ponzi schemes because they generate huge sums of illicit cash. For the crooked insiders to achieve their goal -- to abscond with large amounts of their victims' money -- the cash needs to be collected, consolidated in bank accounts, and then siphoned off and laundered to hide its illegal origin. In addition, to prolong the enterprise before its inevitable collapse, pyramid/Ponzi schemes need to pay participants some amount of their promised returns so that the fraud is not exposed, and they need financial providers to do this.

16.     Every Ponzi or pyramid scheme depends on the provision of financial services by banks, payment processors and other financial services companies, as well as accountants, lawyers and other professionals.

17.     TelexFree was no different. During its operation, it collected and deposited enormous amounts of money – over one billion dollars. Cash receipts averaged $6.4 million a

CLASS ACTION COMPLAINT - 7

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

month in spring 2013 and increased to $66 million a month in the spring of 2014. Without these financial services, TelexFree's operations would have collapsed. The assistance provided by the MDL Defendant Banks, Payment Processors and other professionals allowed TelexFree to continue to operate and expand and allowed TelexFree's principals to abscond with large sums of money paid in by participants. These MDL Defendants were aware that TelexFree was a fraudulent enterprise when they provided this assistance.

18.     The lawyers, accountants and other professionals facilitated the fraud advising the TelexFree insiders on the means to avoid the attention and oversight of regulatory authorities and law enforcement by creating an illusion of legitimacy for the TelexFree operations and by instructing TelexFree how to shelter its ill-gotten gains.

19.     No later than February 2013, the fact that TelexFree was investigated by numerous law enforcement bodies around the world, including the Brazilian Bureau of Consumer Protection ("ProCon") in Acre, Brazil and the Massachusetts Securities Division was known to its financial services providers. ProCon effectively shut down TelexFree's operations in Brazil in June 2013.

20.     During the Spring of 2013:

    a.  a Brazilian court found TelexFree's Brazilian operations to be fraudulent;

    b.  a Brazilian court described TelexFree's operations in terms of the quintessential pyramid scheme;

    c.  TelexFree's own Brazilian lawyers unwittingly admitted its operations in what was a quintessential pyramid scheme;

CLASS ACTION COMPLAINT - 8          BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

d.  TelexFree's Brazilian lawyer Djacir Falcão ("Falcão") advised the Brazilian court that an injunction would cause the company to enter bankruptcy and: "Running the company really becomes difficult because of the court decision, so we will appeal";

e.  Falcão informed the Brazilian court that "should the company spend a few more days being prohibited from signing up new investors, they would have no money to pay the old ones";

f.  all of TelexFree's appeals in the Brazilian courts were denied;

g.  a Brazilian court found that the problem is earnings will be exhausted when the main source of revenue—new member registrations—stops;

h.  a Brazilian court found that adding new Members was more important to TelexFree than trying to sell its VoIP product;

i.  a Brazilian court found that many affiliates suffered detrimental losses. Affiliates do not have the opportunity to recover their initial payment to TelexFree; and

j.  In June 2013, Brazilian court entered an order freezing TelexFree's funds in Brazil, blocking future payments to TelexFree in Brazil, and enjoining TelexFree from signing on new members in Brazil.

21.  It is also not disputed that:

a.  TelexFree required the constant inflow of new investor funds to sustain the pyramid side of its overall scheme;

b.  TelexFree's revenues were generated from website-based purchases;

c.  TelexFree's use of credit cards was inextricably linked to TelexFree's ability to operate;

d.  TelexFree would collapse within months without access to financial services, including banking and payment processing; and

e.  TelexFree met this need by committing fraud on the victim Putative Class Members.

CLASS ACTION COMPLAINT - 9

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

22.    It cannot be disputed that:

a.    TelexFree's banks and payment processors were severing ties with the company by August 2013;

b.    as a result, TelexFree was experiencing significant difficulty locating U.S. banks and payment processors willing to service their "business"; and

c.    Bank of America had severed ties but then immediately reopened new accounts using an unlawful method the industry refers to as layering.

23.    The constant need for new funds – and the unparalleled success bilking members of the Putative Class - drove TelexFree and its co-conspirators, accomplices, aiders and abettors to work with each other to ever increase TelexFree's victim-funded revenue stream.

24.    As detailed below, thereafter the fact that TelexFree was operating an unlawful MLM came to the attention of the financial service providers thereafter again and again in ever increasingly clear, direct, and incontrovertible ways.

25.    As the governmental investigations and publicity about them intensified, TelexFree collapsed. On April 14, 2014, three TelexFree entities—TelexFree Inc., TelexFree LLC, and TelexFree Financial LLC—filed for Chapter 11 bankruptcy protections in the United States Bankruptcy Court for the District of Nevada. The company's U.S. website was taken down the same day, preventing participants from accessing funds held in TelexFree's systems.

26.    The next day, on April 15, 2014, federal agents from the FBI and Homeland Security executed search warrants at TelexFree headquarters in Marlborough, Massachusetts.

CLASS ACTION COMPLAINT - 10

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

During the search, an officer intercepted Settled Defendant Joseph H. Craft—TelexFree's CFO—trying to leave the premises. Craft was carrying ten cashier's checks issued by Defendant Wells Fargo Bank totaling $37,948,296 dated just prior to the bankruptcy filing.

27.     The same day, the U.S. Securities and Exchange Commission and the Massachusetts Securities Division filed actions against TelexFree and its insiders. On July 23, 2014, Wanzeler and Merrill were indicted by the Grand Jury. James Merrill eventually pled guilty on October 22, 2016 to one count of wire fraud conspiracy and eight counts of wire fraud. Merrill was sentenced on March 22, 2017 to six years in prison followed by three years of supervised release. He remains in prison. Merrill also agreed to forfeit approximately $140 million and other assets. Carlos Wanzeler fled to Brazil upon learning that he was under investigation and remains a fugitive. There is currently a federal warrant for his arrest.

28.     Defendants Foster Garvey, Robert Weaver, Sara Sandford, Samuel Kauffman, and Gary Tober, each in his/her/its own capacity and in tandem with other Defendants and many of the other defendants named in the MDL, aided and abetted TelexFree its principals and agents by providing substantial assistance all the while with knowledge of its fraudulent nature.

## II.     PROCEDURAL ALLEGATIONS

29.     This Court has subject-matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1711, *et. seq.*, which vest original jurisdiction in the district courts of the United States for any multi-

CLASS ACTION COMPLAINT - 11

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

state class action where the aggregate amount in controversy exceeds $5,000,000 and where the citizenship of any member of the class of plaintiffs is different from that of any defendant. The $5,000,000 amount-in-controversy and diverse citizenship requirements of CAFA are satisfied in this case.

30.    Venue is proper under 28 U.S.C. § 1391 since a substantial part of the acts, omissions and transactions giving rise to this action occurred in this district and certain Defendants reside in this district.

### III.    PARTIES

**A.    Plaintiffs**

31.    Plaintiff Anthony Cellucci ("Cellucci") is an individual who resides in Belmont, Massachusetts. Cellucci tendered funds for a TelexFree Membership and its promised pre- March 9, 2014 return on investment.

32.    Plaintiff Rita D. Dos Santos ("Dos Santos" and collectively with Cellucci "Plaintiffs") is an individual who resides in Massachusetts. Dos Santos tendered funds for a TelexFree Membership and its promised pre- March 9, 2014 return on investment.

33.    Plaintiffs purchased TelexFree Memberships during the relevant period and have suffered financial losses as a result of the actions described herein by Garvey Schubert and its agents.

CLASS ACTION COMPLAINT - 12                BRANSTETTER, STRANCH & JENNINGS, PLLC
                                           703 SOUTH 8TH STREET
                                           LAS VEGAS, NV 89101
                                           TELEPHONE: 725-235-9750

### B.    Defendants

34.    Foster Garvey, formerly known as Garvey Schubert Barer, P.C. ("Foster Garvey" or "Garvey Schubert") is a Professional Corporation duly organized and existing under the laws of the State of Washington at the time of the actions alleged in this complaint with its principal office located at 1111 3rd Avenue, Suite 3000, Seattle, Washington 98101.

35.    In 2019, Garvey Schubert Barer, P.C. became known as Foster Garvey through the merger of Foster Pepper PLLC into Garvey Schubert Barer, P.C. upon the merger of Foster Pepper PLLC into Garvey Schubert, Barer, P.C. Foster Pepper ceased to exist and Garvey Schubert Barer P.C. was the surviving corporation, thereafter doing business under the name of Foster Garvey P.C. pursuant to the Agreement and Plan of Merger ("Merger Agreement") filed with the Washington Secretary of State on September 30, 2019.

36.    The Merger Agreement provides that "[t]he Merger shall have the effects set forth in Section 23B.11.060 of the Washington Code. Under Washington Rev. Code Ann. § 23B.11.060, "[t]he surviving corporation has all liabilities of each corporation party to the merger." Wash. Rev. Code Ann. § 23B.11.060.

37.    Robert Weaver ("Weaver") is an individual having a last known usual place of abode of 2210 NE Thompson Street, Portland, OR 97212. Weaver was the first attorney at Garvey Schubert emailed by Jeffrey Babener when it became clear that TelexFree needed further legal assistance. Weaver represented TelexFree in criminal defense matters and was particularly involved in preparing TelexFree's defense and submission of false and misleading

CLASS ACTION COMPLAINT - 13

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

evidence to the Massachusetts Securities Division. Weaver traveled to Massachusetts on two occasions in 2014 to gather information about TelexFree's operations and to assist TelexFree's Massachusetts-based executives as they prepared to be deposed by SOC. At all relevant times, Weaver was employed by Garvey Schubert, a Washington corporation. Weaver is an attorney duly licensed to practice law in the State of Oregon.

38.     Samuel C. Kauffman ("Kauffman") is an individual having a last known usual place of abode of 112 SW Abernathy Street, Portland, OR 97279. Kauffman was part of Garvey Schubert's TelexFree team and represented TelexFree in criminal defense matters, particularly in late 2013. At all relevant times, Kauffman was employed by Garvey Schubert, a Washington corporation. Kauffman is an attorney duly licensed to practice law in the State of Oregon.

39.     Gary P. Tober ("Tober") is an individual having a last known usual place of abode of 12028 200th CT NE, Woodinville, WA 98077. Tober was part of Garvey Schubert TelexFree team and represented TelexFree in its international restructuring and worked on plans to move TelexFree's assets—victim's funds—offshore. At all relevant times, Tober was employed by and was a director of Garvey Schubert, a Washington corporation.  Tober is an attorney duly licensed to practice law in the State of Washington.

40.     Sara P. Sandford ("Sandford") is an individual having a last known usual place of abode of 9416 Tulalip Shores Road, Tulalip, WA 98271. Sandford was part of Garvey Schubert Barer's TelexFree team and represented TelexFree in its international restructuring and designed and saw through TelexFree's sheltering of victim's funds offshore. Sandford was

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

the lead in forming TelexFree's Grand Cayman entity. At all relevant times, Sandford was employed by and was a director of Garvey Schubert, a Washington corporation. Sandford is an attorney duly licensed to practice law in the States of California, Oregon and Washington.

41.     At all times each of the above referenced Garvey Schubert attorneys acted within the usual and ordinary course of their employ and with the firm's knowledge and consent.

42.     Defendants Foster Garvey, Robert Weaver, Samuel Kauffman, Gary Tober, and Sara Sandford are collectively referred to as "Garvey Schubert Defendants." Although Weaver and Kauffman live in Oregon, by being employed by Garvey Schubert, a Washington corporation, they transacted business within Washington sufficient to vest personal jurisdiction in this district. On information and belief as part of their work with Garvey Schubert, Weaver and Kauffman routinely traveled to and from Washington state to conduct the business of Garvey Schubert. Weaver as a principal and/or member of Garvey Schubert also owned real or personal property within Washington sufficient to vest personal jurisdiction over him. The claims made in this action Weaver and Kauffman directly relate to these contacts with Washington state and specifically their employment and work with and for Garvey Schubert.

## IV.    CERTAIN MDL DEFENDANTS AND THIRD PARTIES THAT ARE RELEVANT TO CLAIMS ASSERTED AGAINST THE GARVEY SCHUBERT DEFENDANTS

### A.    The TelexFree Insiders

43.     James M. Merrill ("Merrill") is currently incarcerated at FMC Devens in Devens, Massachusetts for his role in TelexFree. Merrill co-founded TelexFree and served as

CLASS ACTION COMPLAINT - 15

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

CEO and held multiple other executive titles and filled across the board roles in pyramid scheme design, marketing, management sales and finance.

44.    Carlos N. Wanzeler ("Wanzeler") cofounded TelexFree and held multiple executive titles and served across the board roles in pyramid scheme design, marketing, management, sales, and financing. Wanzeler is currently a fugitive after absconding to Brazil during federal and state investigations into TelexFree.

45.    Carlos Roberto Costa ("Costa") co-founded TelexFree and ran the Brazilian side of the scheme.

46.    Steven M. Labriola ("Labriola") was the International Marketing Director, Labriola was the day-to-day face of the company for many Promoters as he participated in marketing events and conference calls.

47.    Andreia B. Moreira, also known as Andreia Moreira Biachi, also known as Andreia Pinto ("Moreira"), filled across the board roles in marketing, management, sales, and finance.

48.    Ana Paula Oliveira ("Oliveira"), filled across the board roles in marketing, management, sales, and finance.

49.    Moreira and Oliveira worked at TelexFree's Marlborough Office and were also responsible for implementing the day-to-day activities of the company. For example, they sent wire transfers, addressed Promoter questions and complaints, and interacted with TelexFree's financial services contacts.

CLASS ACTION COMPLAINT - 16

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

50.    Katia Wanzeler is the wife of Carlos Wanzeler and actively assisted her husband in fraudulently stealing and laundering funds that were derived from the TelexFree Pyramid Scheme. On or about May 14, 2014, Katia Wanzeler was apprehended as she attempted to board a flight to Brazil, on which she had a one-way ticket, cash and seventy pounds of luggage.

**B.    Financial Services Providers**

*1.    The Bank MDL Defendants*

51.    TD Bank, N.A. ("TD Bank") provided banking services to TelexFree from no later than September 2012 to at least November 2013.

52.    Bank of America, N.A. ("Bank of America") provided banking services to TelexFree from no later than February 2012 to March 2014.

53.    Kevin Staten was a Senior Vice President with Bank of America. Staten was actively involved in arranging for TelexFree to open an account at Bank of America in February 2014.

54.    Wells Fargo Bank, N.A. ("Wells Fargo"), Wells Fargo Advisors, LLC ("Wells Fargo Advisors", upon information and belief now known as Wells Fargo Financial Network, LLC) (collectively "Wells Fargo") provided banking services, maintained accounts, and received and executed transfers of funds from or for the benefit of TelexFree from no later than June 2012 to April 2014.

CLASS ACTION COMPLAINT - 17

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

55.    Mauricio Cardenas ("Cardenas") was a Financial Advisor and broker for Wells Fargo Advisors. Cardenas was a close friend of Carlos Wanzeler, advised him how to launder TelexFree's money, and opened multiple accounts for Wanzeler and TelexFree.

### 2.    *Payment Processing Service Company MDL Defendants*

56.    International Payout Systems, Inc. ("IPS"), also doing business as i-Payout, provided payment processing services to TelexFree from at least September of 2013 to at least April of 2013, processing over $101 million in a four (4) month period.

57.    Edwin Gonzalez ("Gonzalez") is the President of IPS. Gonzales was actively involved in the TelexFree account and assisted TelexFree with payment processing services.

58.    Natalia Yenatska ("Yenatska") served as IPS' Chief Financial Officer during the class period. Yenatska was actively involved in the TelexFree account and assisted TelexFree with payment processing and marketing services.

59.    ProPay, Inc. ("ProPay"), also doing business as PROPAY.COM, provided payment processing services to TelexFree from at least October 2012 to at least January 2014, processing approximately $112 million in a six (6) month period.

60.    Vantage Payments, LLC ("Vantage Payments") provided payment processing related services to TelexFree from at least August 2013 to at least April 2014.

61.    Dustin Sparman ("Sparman") served as Vantage Payments' Managing Partner during the class period and assisted TelexFree with obtaining payment processing services and establishing TelexFree, Ltd.

CLASS ACTION COMPLAINT - 18

62.     AlliedWallet, Inc., also d/b/a Allied Wallet ("Allied Inc.") (collectively with Allied Wallet, Ltd., "Allied Wallet"), and has maintained a principal place of business at 9000 Sunset Boulevard, Suite 820 is a Nevada corporation with a registered agent address of 769 Basque Way, Suite 300, Carson City, Nevada, West Hollywood, California. Allied Wallet, Ltd. is a limited company having its central office in the United Kingdom and its United States office at 900 Sunset Boulevard, Suite 820, West Hollywood, California 90069. Allied Wallet provided payment processing services to TelexFree from at least August 2013 to at least April of 2014, processing approximately $86 million for TelexFree in a five (5) month period.

63.     Ahmad Khawaja ("Khawaja"), also known as Andy Khawaja, is the founder, CEO, director, and owner of Allied Wallet.

64.     In or about April 2019, AlliedWallet, Inc. Allied Wallet, Ltd., and Khawaja, along with two other entities, agreed to pay $110,050,941 to settle an action brought by the FTC concerning Allied Wallet's payment processing activity for high risk clients, including TelexFree (the "FTC Action").

65.     Mohammad Diab ("Diab"), also known as Moe Diab, is the Chief Operations Officer for Allied Inc. and formerly the Director of Risk and Chargebacks. On or about June 21, 2019, a monetary judgment of $1,000,000 was entered against Diab in the FTC Action pursuant to stipulation.

CLASS ACTION COMPLAINT - 19

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

66.    Amy Rountree ("Rountree") was the VP of Operations for Allied Inc. On or about July 3, 2019, a monetary judgment of $320,429.82 was entered against Rountree in the FTC Action pursuant to stipulation.

67.    Bank Card Consultants, Inc. ("Bank Card Consultants") provided payment processing services to TelexFree from at least September 2013 to at least December 2013.

68.    John Yurick ("Yurick") was Bank Card Consultant's owner during the class period. Yurick was actively involved in the TelexFree account and assisted TelexFree with payment processing services.

69.    Priority Payout, Corp. ("Priority Payout") provided payment processing services to TelexFree from at least January 2014 to at least April 2014.

70.    Thomas A. Wells ("Wells") Wells served as CEO and authorized representative of Priority Payout. Wells was actively involved in the TelexFree account and assisted TelexFree with payment processing services.

**C.    TelexFree Entities**

71.    TelexElectric, LLLP ("TelexElectric") received funds totaling $2,022,329 from TelexFree Inc. and TelexFree LLC.

72.    Telex Mobile, Holdings, Inc. ("Mobile") received funds totaling $500,870 from TelexFree Inc. and TelexFree LLC.

**D.    Previously Settled Defendants**

CLASS ACTION COMPLAINT - 20

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

73.    The Settled Defendants are included because they are necessary to put facts into context and to provide background for the larger conspiracy.

74.    Joseph H. Craft, also known as Joe H. Craft ("Craft") is a CPA and privately provided accounting services and financial advice to TelexFree and others before serving as the Chief Financial Officer of TelexFree, Inc. and TelexFree, LLC. Craft was introduced to TelexFree by Nehra in 2012 and stayed involved through to the very end.

75.    Craft Financial Solutions, LLC ("Craft Financial") through Settled Defendant Craft, provided accounting services and financial advice to TelexFree and others.

76.    Fidelity Co-operative Bank, doing business as Fidelity Bank, ("Fidelity Bank") provided banking services, maintained accounts, and received and executed transfers of funds from or for the benefit of TelexFree and its founders from no later than August 2013 to at least February 2014.

77.    John F. Merrill is the brother of Defendant Merrill and served as President and Chief Operating Officer of Fidelity Bank during the class period. Mr. Merrill authorized the transfer of millions of dollars from TelexFree's accounts at Fidelity Bank to the personal accounts of Merrill and Wanzeler.

78.    Synovus Bank ("Synovus") served as the Sponsor Bank for Settled Defendant payment processor Base Commerce during the class period.

CLASS ACTION COMPLAINT - 21

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

79.    Base Commerce, LLC ("Base Commerce") provided payment processing services to TelexFree from at least April 2013 to at least December 2013, processing approximately $36 million in a two (2) month period.

80.    John Hughes ("Hughes") served as Base Commerce's President during the class period and assisted TelexFree with payment processing services.

81.    Alexander Sidel ("Sidel") worked for Base Commerce during the class period and assisted TelexFree with payment processing services.

82.    Jason Doolittle ("Doolittle") worked for Base Commerce during the class period and assisted TelexFree with payment processing services.

83.    John Kirchhefer ("Kirchhefer") worked for Base Commerce during the class period and assisted TelexFree with payment processing services.

84.    Brian Bonfiglio ("Bonfiglio") worked for Base Commerce during the class period and assisted TelexFree with payment processing services.

## V.    DETAILED ALLEGATIONS

### A.    The TelexFree Scheme.

85.    TelexFree purported to sell a Voice over Internet Protocol ("VoIP") telephone service called 99TelexFree. VoIP technology allows users to make telephone calls over the Internet, often far cheaper than they can through traditional carriers. Users could download the 99TelexFree product on their computer or (later) their smartphone and then register their phone number with TelexFree. From the registered phone number, the user would call a local access

CLASS ACTION COMPLAINT - 22

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

number, the TelexFree system would recognize a call by a registered phone number, and the user would then hear a new dial tone that would allow them to complete their international call. However, TelexFree's purported VoIP product accounted for just 1% of all TelexFree's revenue.

86.    In the hallmark of a Ponzi/pyramid scheme, TelexFree's real source of income— about 99% of its revenue—was a scheme whereby members were rewarded for bringing in new members. TelexFree's AdCentral program invited people to invest significant sums to join TelexFree and then allowed them to earn money without ever selling TelexFree's VOIP product. The money from new promoters was used, in turn, to pay TelexFree's financial obligations to the existing promoters. TelexFree's entire business depended on this constant influx of money from new promoters to meet its obligations. TelexFree used a variety of techniques to draw new promoters into its program, including maintaining a website at www.telexfree.com, posting instructional marketing videos to YouTube and other social media sites, and hosting conferences.

87.    All users were required to pay a $50 membership fee to TelexFree. After payment    of the membership fee, users were provided with a "back office" page on the TelexFree website. The back office page was an electronically accessed account display. Notably, once users paid the membership fee, they tracked their TelexFree purchase and profit online. The system was designed and promoted as being essentially paperless.

CLASS ACTION COMPLAINT - 23

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

88.    Users could then purchase an "ADCENTRAL" package for $289 (for a total cost of $339) or an "ADCENTRAL FAMILY" package for $1,375 (for a total cost of $1,425). With either package, TelexFree purported to give the promoter VOIP packages to sell, although there was no physical product conveyed.

89.    The ADCENTRAL plan gave the promoter access to ten VOIP products to sell each week of the year-long agreement. If the promoter posted one ad for seven consecutive days, TelexFree would "buy back" any unsold stock for $20 and would do so every week. Thus, an investment of $339 resulted in a guaranteed annual return of $1,040 ($20 x 52 weeks), without ever selling the VOIP product, so long as the promoter posted template ads on classified ad websites that were already saturated with TelexFree ads from other promoters. While posting ads required minimal effort, promoters could also pay third parties to post on their behalf.

90.    The ADCENTRAL FAMILY plan gave the promoter access to fifty VOIP products to sell each week of the year-long agreement. If the promoter posted five ads per day, the company would "buy back" any unsold stock at the end of the seven-day period for $100 and would do so every week. Thus, an investment of $1,425 resulted in a guaranteed annual return of $5,200, regardless of whether they sold the VOIP product.

91.    If the ads did in fact lead to a retail sale, the promoter was promised a 90% commission of the $49.99 paid by the retail customer for the first month of TelexFree's VOIP

CLASS ACTION COMPLAINT - 24

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

service. If the retail customer renewed on a monthly basis, the promoter earned an additional 10% commission each time.

92.    TelexFree also offered a variety of recruitment-related bonuses that purported to require promoters to make one retail sale of the VOIP product. But, as TelexFree knew, numerous promoters simply bought the VOIP product themselves, using a different username, and paid the monthly $49.90 cost of the service with credits that they had collected in TelexFree's virtual "back office."

93.    Promoters were paid to recruit other people and then compensated again when their recruits recruited additional people, all without any one level of participants being required to make real retail sales of the VOIP product.

94.    For example, for each direct recruit brought into TelexFree at the ADCENTRAL level, the recruiter received a $20 'fast start' bonus. For each direct recruit brought into TelexFree at the ADCENTRAL FAMILY level, the recruiter received $100. Excluding the purported sale of one VOIP product, promoters received these bonuses without any real retail sales of the VOIP product.

95.    Promoters would also receive an additional $20 or $80 each time they completed a pairing of recruits on the right and left side of their pyramid.

96.    Promoters would also be paid for TelexFree's "buy backs" from promoters they had recruited going six levels deep and they would also profit from actual VOIP sales made by promoters they had recruited.

CLASS ACTION COMPLAINT - 25

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

97.     TelexFree also offered a "Team Builder" bonus. If a promoter made five retail sales of the VOIP product, directly recruited 10 AdCentral Family promoters, and then each of those recruits made five retail sales of the VOIP product, the promoter could earn a maximum bonus of $39,600.

98.     All of this information was available from a review of TelexFree's website and/or its membership contract.

99.     In addition to the AdCentral program, TelexFree's website promoted a fraudulent opportunity to participate in a Best Western hotel investment through a Brazilian affiliate. The Best Western investment opportunity was prominently promoted on the front page of TelexFree's website and guaranteed a yearly annual return of 8%. TelexFree viewed the opportunity as an important marketing tool to bolster TelexFree's credibility worldwide. There was no business relationship between TelexFree and Best Western.

**B.      TelexFree's Marketing and Public Statements Were Easily Detectable by the Garvey Schubert Defendants.**

100.    TelexFree was an internet-based business and leveraged its website and social media to draw new promoters into the scheme. TelexFree targeted and marketed to members of the Brazilian and Latin American immigrant communities in Massachusetts, the United States, and around the world.

101.    For example, in or about the summer of 2012, TelexFree's website advertised the fact that promoters could make money without ever selling TelexFree's VOIP product. The website announced:

CLASS ACTION COMPLAINT - 26

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

Be our promoter
Earn money doing announcements on Internet!
Through a ADCENTRAL, that you geot [sic] for the amount of US $299 (annually).
The promoter will receive US$20 each week that makes 7 different announcements in websites of free announcements online, from Monday to Sunday. All in a way fast, easy, and standardized in your virtual office (BO) TelexFree.
This will be for the 52 weeks of the year, of your contract, then see the simulation:
52 weeks x $20 (Putting the 7 announcements) = $1,040 in the year.

102.    A PowerPoint presentation available to download on TelexFree's website made similar claims, with one version of the presentation announcing: "Earn money the smart way! Without having to invite anyone, without selling anything in the comfort of your own home." The presentation explained the AdCentral program and the opportunity to make $1,040 or $5,200 a year, depending on the level joined.

103.    In addition to their own website, TelexFree's executives and other representatives used social media sites, including YouTube, to communicate with existing promoters and to reach out to new promoters. TelexFree created recordings specifically for Internet distribution and was also aware that recordings of TelexFree's corporate events were distributed online by others.

104.    For example, on August 19, 2013, a TelexFree Facebook page falsely posted: "The President of Google involved with Telexfree!! Google's President will be speaking at our next Telexfree event in Brazil….11 year contract with Best Western 23 Millionaires in 1 year

CLASS ACTION COMPLAINT - 27                    BRANSTETTER, STRANCH & JENNINGS, PLLC
                                               703 SOUTH 8TH STREET
                                               LAS VEGAS, NV 89101
                                               TELEPHONE: 725-235-9750

and now Google's President at our Next event. Hmmmm is he coming to your's [sic]?. Didn't think so…. It's time to get educated. You get what you pay for!"

105.    TelexFree also used these online resources to mislead existing and potential Promoters about the investigations into TelexFree's Scheme. For example, following the shutdown of TelexFree in Brazil, Merrill, Wanzeler, and other TelexFree executives assured U.S. promoters that there was nothing to worry about.

106.    In a TelexFree conference call, which was posted to YouTube on June 20, 2013, Merrill reassured listeners that there was nothing to worry about, claiming that such inquiries were very common in network marketing and urging Promoters to keep working, asserting "nothing will affect the U.S."

107.    In a January 2014 call with promoters, which was published on YouTube, Labriola stated "there is no investigation . . . in any way, shape or form."

108.    TelexFree also hosted "extravaganzas" where TelexFree's executives would speak directly to promoters. The events happened at various locations around the world with hundreds or thousands of promoters in attendance. Merrill and Wanzeler, along with the other speakers, would promote a lavish, upbeat image of the company and its prospects and seek to build excitement, positioning Merrill as a minor celebrity.

109.    In July 2013, Newport Beach, California became the staging ground for TelexFree's first United States-based "Extravaganza." The July 2013 TelexFree "Super Weekend" was organized by pyramid scheme Zeek Rewards' high-profile pitchman Thomas

BRANSTETTER, STRANCH & JENNINGS, PLLC
                                                   703 SOUTH 8TH STREET
                                                   LAS VEGAS, NV 89101
                                                   TELEPHONE: 725-235-9750

More. At the time More organized TelexFree's Newport Beach "Super Weekend" extravaganza, he was a named defendant in a Zeek Rewards Ponzi scheme-related lawsuit.

110.    During the July 2013 TelexFree "Super Weekend," Defendant Nehra gave his "blessing" to TelexFree, representing not only that it was a lawful enterprise and why, but also that he was a duly licensed attorney with extensive specialized skill and experience in MLM.

111.    On November 5 and 6, 2013, TelexFree hosted another "Super Weekend" in Orlando, Florida with tickets costing $196 per person. Merrill dismissed commentary calling TelexFree a pyramid scheme and assured the crowd that they could "trust and believe" in what they were doing:

> I hate to bring up a negative, but it's important. Because negatives get turned into positives. We have plenty of blogs out there that, you know, don't – don't always speak kindly about us, they don't know us. But we know what they're about. They want you guys to go on their website and your competitors will go on their website, drawing traffic that will help them earn a living. I don't blame them. It's business. But what a difference is between you people is trust and belief in what we're doing, and I thank you all for believing in us and helping us get to that next level.

112.    On December 15-16, 2013, TelexFree hosted a sponsored event in Brazil on a cruise ship off the Brazilian coast. Merrill announced that TelexFree was "just getting started." Later, TelexFree offered a DVD of the event for sale that featured Brazil promoters who had become millionaires.

113.    On March 1-2, 2014, a "mega event" was held in Spain.

CLASS ACTION COMPLAINT - 29

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

114.    On or about March 9, 2014, TelexFree hosted a "New Compensation Plan" Conference at the Marriott Copley Place Hotel in Boston, Massachusetts. During this conference, TelexFree executives touted the quality of the VOIP product. Merrill told the crowd, "You're gonna get paid," and "We are here to help you make money." Wanzeler falsely claimed that in the preceding month, "Over 600,000 customers paid $49.90 to TelexFree99."

C.    **Brazilian Authorities Investigate and Close Down Telexfree Brazil in 2013.**

115.    In January 2013, following inquiries from consumers, the Brazilian Bureau of Consumer Protection ("Procon") in Acre announced that it had been investigating TelexFree's Brazilian operations. Procon's press release stated its concern that TelexFree's scheme violated the Brazilian law prohibiting Ponzi/Pyramid schemes and that Procon had notified the State Public Ministry, the Secretariat for Economic Monitoring of the Ministry of Finance and the Federal Police.

116.    According to later filings by the U.S. Department of Justice, as of February 19, 2013, TelexFree's Brazilian bank balances totaled over $200,000,000 and TelexFree bank accounts in Brazil had received approximately $446,000,000 in U.S. dollars during the period they were recruiting promoters in Brazil. Much of this money was transferred to TelexFree's U.S. accounts.

117.    In June 2013, Brazilian authorities won an injunction prohibiting TelexFree from recruiting new promoters and from taking in funds or paying money to existing TelexFree promoters. The injunction essentially closed TelexFree's Brazilian operations.

CLASS ACTION COMPLAINT - 30                    BRANSTETTER, STRANCH & JENNINGS, PLLC
                                               703 SOUTH 8TH STREET
                                               LAS VEGAS, NV 89101
                                               TELEPHONE: 725-235-9750

118.    TelexFree in Brazil released a note on its website explaining the court's decision. The note says as follows (translated from the original Portuguese) and viewed by the banks and pay processors that accepted them as a client was the following splash page on the website By judicial decision issued on June 13th, 2013, Judge Thais Queiroz B. de Oliveira Abou Khalil, in the records of the Preparatory Action No. 0005669- 76.2013.8.01.0001, filed by the Prosecutor of the Acre State, in the 2nd Civil Court of Rio Branco - AC, new subscriptions to the Telexfree network are prohibited in the Partner or Promoter conditions; receiving of Returnable Deposit Funds and Costs of Reserve Position by Telexfree are forbidden; sales of 99Telexfree VoIP accounts in ADCentral and ADCentral Family modalities are prohibited; payments are prohibited, both to partners and promoters, of commissions, bonuses and any benefits derived from the Telexfree network (from sales of VoIP 99 Telexfree accounts, from new registration, ad postings, forming new direct or indirect binaries, royalty, Team Builder, among others which may be owed); that the breach of any of the above determinations will incur in the payment of a fine of R$ 100,000.00 (one hundred thousand Reais) for each new registration or re-registration and each improper payment. — *Telexfree Brazil, via a splash page on its website*

**D.    Governmental Investigations Lead to Telexfree's Demise.**

119.    The Massachusetts Securities Division ("SOC" or "COMSOC") also started an investigation into TelexFree. On April 4, 2013, the Division issued requests for information to TelexFree, Inc. On or about January 22, 2014 and February 5, 2014, the Massachusetts

CLASS ACTION COMPLAINT - 31                     BRANSTETTER, STRANCH & JENNINGS, PLLC
                                                703 SOUTH 8TH STREET
                                                LAS VEGAS, NV 89101
                                                TELEPHONE: 725-235-9750

Securities Division investigation reappeared when TelexFree was served with subpoenas and the Division sought to depose Merrill and Wanzeler. They were deposed on March 25 and 26, 2014.

120.    With the Massachusetts Securities Division investigation looming large TelexFree's executives and advisors refocused their efforts on making changes to the program, with a view to offering a "more compliant" plan as part of TelexFree's defense strategy.

121.    On March 9, 2014, TelexFree announced changes to its program. The new program purported to impose new requirements on promoters, including requiring participants to sell the VoIP product in order to qualify for the promised payments. These changes were an attempt to portray TelexFree as a legitimate MLM company. They also essentially nullified the promises regarding weekly payments which were the key to TelexFree's sales of its ADCentral and ADCentral Family memberships.

122.    The new program was not well received. Daily revenues dropped from approximately $3,000,000 a day to between $100,000 and $300,000 per day. In the week following the introduction of the [March 9 Plan], members asserted claims for an aggregate of $8 million from their back office accounts, then $20 million the following week, $30 million each of the following two weeks, and $86 million the week before they went bankrupt.

123.    On April 1, 2014, dozens of members descended upon TelexFree's Marlborough, Massachusetts office to protest this change and attempt to regain access to their money. One protestor was quoted in the press as saying the product was "impossible to sell."

CLASS ACTION COMPLAINT - 32                BRANSTETTER, STRANCH & JENNINGS, PLLC
                                           703 SOUTH 8TH STREET
                                           LAS VEGAS, NV 89101
                                           TELEPHONE: 725-235-9750

124.    The end came quickly. Little more than a month after announcing its new program, on April 14, 2014, three TelexFree entities—TelexFree Inc., TelexFree LLC, and TelexFree Financial LLC—filed for Chapter 11 bankruptcy protections in the United States Bankruptcy Court for the District of Nevada.

**E.    Enforcement Actions by State and Federal Authorities.**

125.    The very next day, on April 15, 2014, federal agents from the FBI and Homeland Security executed search warrants, including at TelexFree's headquarters in Marlborough, Massachusetts. During the search, an officer intercepted Settled Defendant Craft trying to leave the premises with a laptop and a bag. While Craft claimed he was a consultant and retrieving personal items, officers found ten Wells Fargo Bank cashiers' checks totaling $37,948,296 in his bag. Eight of the checks were dated April 11, 2014 – the Friday before TelexFree filed for bankruptcy – and were remitted to Merrill. Five of these checks were made out to TelexFree LLC, in the total amount of $25,548,809. One check was made out to Wanzeler's wife in the amount of $2,000,635. One check, dated April 3, 2014, and remitted to Wanzeler himself was made out to TelexFree Dominicana SRL in the amount of $10,398,000.

126.    The same day, the U.S. Securities and Exchange Commission filed charges against TelexFree in the United States District Court seeking an immediate asset freeze which the Court granted. The same day, April 15, 2014, the Massachusetts Securities Division filed its Administrative Complaint against TelexFree, Inc. and TelexFree LLC alleging violations of the Massachusetts Uniform Securities Act and related regulations. The complaint alleged

CLASS ACTION COMPLAINT - 33

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

that TelexFree raised over $90,000,000 in the Commonwealth and nearly $1,000,000,000 worldwide.

127.    On May 9, 2014, the U.S. Department of Justice filed a criminal complaint against Carlos Wanzeler and James Merrill alleging conspiracy to commit wire fraud. The DOJ estimated that TelexFree's victims worldwide lost $3,045,000,000 when the scheme collapsed. On July 23, 2014, Wanzeler and Merrill were indicted by the Grand Jury and on October 24, 2016, the day his trial was scheduled to begin, James Merrill pled guilty to one count of wire fraud conspiracy and eight counts of wire fraud. Merrill was sentenced to six years in prison followed by three years of supervised release. He remains in prison to this day. Merrill also agreed to forfeit approximately $140 million and other assets. Carlos Wanzeler fled to Brazil upon learning that he was under investigation and remains a fugitive.

128.    On or about May 14, 2014, Katia Wanzeler was arrested on a material witness warrant at JFK International Airport as she attempted to leave the United States. Mrs. Wanzeler was later released after giving up her passports.

129.    On September 22, 2014, the Massachusetts Securities Division entered into a Consent Order with Fidelity Co-Operative Bank resolving issues around Fidelity Bank's involvement with TelexFree. Under the terms of the Consent Order, Fidelity Bank agreed to pay $3,500,000 into a Massachusetts Victim Relief Fund.

130.    On September 16, 2015, TelexFree in Brazil (Ympactus Comercial SA) was ordered to pay 3 million Brazilian reals or over $500,000 U.S. Dollars in damages.

CLASS ACTION COMPLAINT - 34                BRANSTETTER, STRANCH & JENNINGS, PLLC
                                           703 SOUTH 8TH STREET
                                           LAS VEGAS, NV 89101
                                           TELEPHONE: 725-235-9750

131.    On December 21, 2015, the Bankruptcy Court found that TelexFree LLC, TelexFree Inc., and TelexFree Financial Inc. operated a pyramid and Ponzi scheme and were joint and severally liable for damages.

132.    On May 25, 2017, the SEC settled with Sanderley Rodrigues de Vasconcelos for $1.83 million, including $1.7 million in disgorgement and prejudgment interest and a $150,000 civil penalty. Rodrigues admitted that he was a promoter of TelexFree, appeared at TelexFree-sponsored public events and other gatherings at hotels and resorts. He also admitted that he appeared in promotional videos that were posted to YouTube and that he had posted at least one video himself. Rodrigues was required to transfer certain assets to settle an adversary action filed by the Chapter 11 Trustee. At all times Sanderley Rodrigues was a known associate of TelexFree and one of its top US promoters.

133.    On July 14, 2017, the SEC settled with Steven Labriola. Labriola was ordered to pay $25,000 in disgorgement and prejudgment interest. Labriola admitted that he was responsible for TelexFree's relationships with its promoters, ran numerous training conferences, and that he was one of the main public faces of TelexFree, providing periodic "corporate updates" and appearing in other promotional videos that were posted on YouTube.

134.    On September 12, 2017, the SEC settled with Merrill and Craft. Merrill's final judgment of approximately $3.6 million in disgorgement and prejudgment interest was deemed satisfied by the order of restitution in the criminal case. Craft's final judgment to pay $298,708 in disgorgement and prejudgment interest and a $50,000 penalty was deemed satisfied by an

CLASS ACTION COMPLAINT - 35

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

order requiring Craft to transfer certain assets to settle an adversary action in the bankruptcy case.

135.    Merrill had previously pled guilty to criminal charges. Craft admitted to preparing Financial statements provided to telecommunications regulators, as well as a financial regulator, materially overstating the pyramid scheme's income.

136.    On February 8, 2018, Cleber Rene Rizerio Rocha was sentenced to 33 months in prison and one year of supervised release after he pleaded guilty to one count of conspiring to commit money laundering and one count of money laundering. After Wanzeler fled the U.S., he left millions of dollars behind him. Rocha flew from Brazil to New York City in January 2017 as part of a scheme to help launder Wanzeler's cash out of the United States. DOJ agents followed Rocha to an apartment in Westborough, Massachusetts where approximately $20 million in cash was found hidden in a mattress box spring.

137.    On April 27, 2018, the SEC obtained a final judgment against Randy Crosby ordering him to pay $294,014 in disgorgement by transferring assets to settle an adversary action filed by the Chapter 11 Trustee and enjoining him from future violations of Section 5 of the Securities Act of 1933. Crosby admitted that he was a promoter of TelexFree, appearing in promotional videos that were posted on YouTube and making daily marketing presentations. At all times Crosby was a known associate of TelexFree and one of its top US promoters.

138.    On August 14, 2018, the SEC settled with Santiago De La Rosa. As a result of the settlement, De La Rosa was ordered to pay $1,092,013 in disgorgement and prejudgment

CLASS ACTION COMPLAINT - 36

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

interest, which was deemed satisfied by an order requiring De La Rosa to transfer certain assets to settle an adversary action in the bankruptcy case. On June 4, 2019, the SEC settled with Faith Sloan. Sloan was ordered to pay $1,271,215 in disgorgement and prejudgment interest and a civil penalty of $7,500. The payment was deemed partially offset by an order requiring Sloan to transfer certain assets to settle an adversary action in the bankruptcy action.

139.    At all times relevant De la Rosa and Sloan were highly visible TelexFree marketing fixtures and highly profitable promoters who appeared at public events to recruit for TelexFree and in promotional videos that were posted on YouTube. At all times De La Rosa and Sloan were known associates of TelexFree and among its top US promoters. As explained below, BSA/AML investigations tied De La Rosa to TelexFree not only during the account opening phase, but also during the KYC monitoring phase.

140.    On September 28, 2018, the SEC settled with TelexFree, Inc. and TelexFree, LLC. As a result of the settlement the companies were enjoined from future violations of the Securities Laws. The companies both admitted that they were engaged in a Ponzi and pyramid scheme. The SEC also voluntarily dismissed its unjust enrichment claims against TelexFree Financial, Inc.

141.    On November 2, 2018, the SEC obtained default judgments against TelexElectric, LLP and Telex Mobile Holdings, Inc. TelexElectric was ordered to pay $2,0222,239 and Telex Mobile Holdings was ordered to pay $500,870.

CLASS ACTION COMPLAINT - 37

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

142.    On March 26, 2020, the first in what is expected to be a number of significant awards to the IRS was entered. Specifically, the IRS was granted summary judgment in its claim to be granted an elevated prepetition priority unsecured claim to over $15.5 million of the bankruptcy estate's assets based upon a 2013 erroneous tax refund given to TelexFree. *See In re: TelexFree, LLC*, Case No. 14-40987, Adv. Proc. No. 18-4091, 2020 WL 1659472 (Bankr. D. Mass. Mar. 26, 2020). Some, if not all will be attributed to the aiding and abetting of TelexFree's pyramid scheme by PwC.

**F.    The Role of The Garvey Schubert Defendants.**

143.    Running a massive, global Ponzi scheme is complicated. TelexFree brought in the most experienced MLM experts available to guide them on how to continue bringing in millions of dollars from victims while avoiding the attention of regulators. All of them were in a position to recognize TelexFree as a Pyramid/Ponzi scheme on its face and they did. Yet, despite knowing that TelexFree was a Pyramid/Ponzi scheme and – for many of the Licensed Professionals – ethical obligations imposed by their licensing authorities, the Licensed

144.    Professionals, including the Garvey Schubert Defendants, turned a blind eye to TelexFree's illegality and instead leveraged their contacts and considerable expertise to assist in TelexFree's continued growth.

145.    MDL Defendant Babener joined the scheme in August 2013 and immediately recognized TelexFree as a Ponzi/Pyramid scheme. Babener participated in and advised on almost every aspect of the scheme – from Promoter agreements to international restructuring

CLASS ACTION COMPLAINT - 38

to criminal defense. Babener leveraged his contacts and expertise in the MLM space to assist TelexFree and assemble a team of experts to perpetuate TelexFree's continuing fraud, ultimately serving as a de facto CEO for the company.

146.    First, Mr. Babener reached out to Mike Sheffield and The Sheffield Group, another group of self-described MLM experts, for assistance in revising TelexFree's compensation plan. Babener and Sheffield had worked together many times before and Babener was clear with Sheffield and his team from the beginning that TelexFree's guaranteed compensation plan was illegal. Even with Babener's warning, Sheffield and his team came on board and continued to work with TelexFree until the bankruptcy filing. The Sheffield team worked on revising TelexFree's compensation plan and were clear that the plan only worked as a Pyramid scheme – the numbers just wouldn't work any other way.

147.    Next, Babener reached out to attorneys he knew at Garvey, Schubert & Barer to support him on legal issues. Babener sought out Defendant Weaver, and then Defendant Kauffman, for their criminal defense expertise in light of Babener's concern that the Brazilian shut down could lead to issues for TelexFree within the U.S. too. Babener sought to add Defendant Tober and Defendant Sandford to the team for their international restructuring expertise.

148.    In his very first email to the Garvey Schubert Barer attorneys, Babener highlighted the issues with TelexFree's plan yet the Garvey Schubert Barer attorneys agreed to represent TelexFree anyway. Kauffman and then Weaver worked to address criminal issues

CLASS ACTION COMPLAINT - 39

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

and on strategies to shield TelexFree from the notice of regulatory authorities, eventually bringing another lawyer into the team to focus on quieting Promoter complaints. Tober and Sandford worked on a global restructuring plan, in consultation with PWC, designed to offshore TelexFree's assets and shield them from recovery by victims of the scheme. For example, in March 2014, knowing that the Massachusetts Securities Division investigation was closing in on TelexFree, Defendant Sandford formed TelexFree's Grand Cayman entity in a matter of days. Both Tober and Sandford strategized on the best ways for TelexFree to continue processing victim's funds while evading U.S. jurisdiction. Sandford also participated in seeking out new banking partners for TelexFree following account closures towards the end of 2013. Babener recommended another Garvey Schubert Barer attorney to the team to advise on immigration issues facing high-performing Promoters seeking to attend a TelexFree marketing event.

149.    Based upon their review of documents produced by TelexFree, other investigative efforts, their specialized education training and experience, and intra- team communications, each Babener and Garvey Schubert individual Defendant gained actual knowledge that TelexFree was a pyramid/Ponzi Scheme and that:

a.    TelexFree utilized the same "program/business model" that its related Brazilian company used before its shut down;

b.    the terms of TelexFree's standard form contract violated Massachusetts law;

c.    the content of TelexFree's website or other marketing materials was violative of the law; and

CLASS ACTION COMPLAINT - 40

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

     d.   new victims, and existing victims, were continuing to be defrauded of the funds they were investing in TelexFree.

150.    MDL Defendant Babener's team concluded TelexFree must restructure its unlawful compensation plan – i.e., its promises of guaranteed returns on a passive investment -- to make it legal. They never did so. Rather, they simply aided and abetted the continuation of the fraud.

151.    At all relevant times during the Fall of 2013, Babener and Garvey Schubert, The Sheffield Group and PwC were acutely aware of the closing circle of legal investigations in both the United States and worldwide. The team's focus was to stave off the investigations as long as possible so the fraud could continue and they could implement a plan to remove as much of TelexFree's illicit gains as possible from the reach of the United States legal system.

152.    At all times relevant hereto, Garvey Schubert Defendants Kauffman, Weaver, Tober, and Sandford acted within the regular and usual course of their employment and within the scope of their authority as partners/employees of Defendant Foster Garvey and each is jointly and severable liable.

153.    Each Garvey Schubert Defendant is vicariously, jointly and severally liable for all actions taken by its partners, employees, agents and representatives, including Kauffman, Weaver, Tober, and Sandford.

       ***1.    The Garvey Schubert Defendants Knew That TelexFree Was a Pyramid/Ponzi Scheme from the Beginning of Their Representation.***

CLASS ACTION COMPLAINT - 41

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

154.    Babener expressly advised the Garvey Schubert Defendants that TelexFree was operating an unlawful business. Subsequently Babener and the Garvey Schubert repeatedly confirmed their actual knowledge in multiple ways including writings, actions and inaction. The Garvey Schubert Defendants had actual knowledge that TelexFree was a fraudulent scheme at all relevant times.

155.    On September 23, 2013, Babener communicated directly with Kauffman. In his initial email communication, Babener informed him that TelexFree's "sister company is having issues in Brazil and I have concern for spillover here," that he had "concerns about the current program and it is being Modified with assistance of the Sheffield Group to be more compliant," and that he wanted Weaver and then Kauffman involved for "potential US issues, regulatory or criminal" issues and Tober and Sandford involved for "international structuring, for corporate, tax and asset protection purposes." Also, on September 24, 2013, Babener emailed Kauffman and Sandford an article from BehindMLM.com that made plain TelexFree's illegality. It discussed TelexFree's issues in Brazil, titled "TelexFree vows recovery in Bankruptcy Protection." Babener also copied the article and the comments to the article into the body of that email. Upon information and belief, Kauffman passed both messages along to the Garvey Schubert team.

156.    Merrill, Babener, Sandford, and Kauffman participated in a call where they discussed potential regulatory, civil, and/or criminal issues facing TelexFree due to its

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

illegality. Later the same day, Garvey Schubert agreed to represent TelexFree as a client, with Sandford emailing TelexFree an engagement letter and requiring a $50,000 advance fee deposit.

157.    In a September 25, 2013 email from Babener to Merrill and the Garvey Schubert attorneys, Babener disclosed that Costa had sold his TelexFree shares to Merrill to cut ties between TelexFree and Ympactus. He also raised confidentiality regarding communications with Craft – i.e., that they would not be protected. Babener stated:

> "I am sure he acts as a virtual CFO for nancy [sic] clients, although not formally employed or an actual part of management. I tend to doubt that, unless the role as a part of management is formalized, that communications with him are protected by attorney client privilege confidentiality in a way that is different than any other CPA firm. ***Given some vetw [sic] delicate legal issues, I would like Sara and Sam to weigh in here*** Again, Joe is an important part of your business and his involvement is pivotal, and it will be. Nevertheless, confidentiality of upcoming communication is essential." (emphasis in original).

Sandford and Kaufman resolved the issue.

158.    On or about September 30, 2013, following a conference call between Babener, Merrill, Sandford, Tober, Craft, and Wanzeler, Sandford emailed Babener requesting a copy of the agreement TelexFree used with its promoters. That same day Babener emailed Sandford stating he was attaching in pdf the terms of agreement that TelexFree uses [for promoters]. Babener flagged:

> "We have not worked on these to modify them. Rather, we have focused on the compensation and marketing program, which substantially need to be addressed. [We] provided Merrill with suggested rep agreement terms and policies. We think the company would do well to adopt what we have drafted as our drafts address

CLASS ACTION COMPLAINT - 43

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

> many consumer protection compliance issues and dovetail with the advice we are giving about changing the marketing approach to be driven by customer revenue rather than distributor fees."

159.    In another email of that day, Babener copied Kauffman, Sandford and Tober in his response to an email from Merrill regarding an article titled "MLM Pro Ken Stewart Perspective on The Question of TelexFree Being A Pyramid or Ponzi.

160.    On September 30, 2014, Babener copied Kauffman, Sandford and Tober of Garvey Schubert on an email to Merrill in which he bluntly told Merrill:

> "Your primary challenge: your historical revenue stream has been dominated by distributor payments rather than product/service sales revenue. **You will not survive legally (civil or criminal) or from a business standpoint, unless there is a dramatic change**...", providing each of them with actual knowledge. (emphasis added).

161.    The combination of their own review of TelexFree's documents and Babener's guidance ensured that Garvey Schubert Barer and its individual attorneys were aware that TelexFree was an illegal Pyramid/Ponzi scheme from the very beginning of its representation.

### 2.    *Garvey Schubert Provided Substantial Assistance to TelexFree Through April 2014.*

162.    Each Defendant Garvey Schubert attorney drew upon their prior experience to aid, abet and play a substantial and integral part in TelexFree's unlawful, unfair and deceptive acts and practices. While Babener provided lots of face time and took lots of credit, Garvey Schubert did the heavy lifting and took the lead or co-lead role in most of the essential assistance offered by the Attorney Defendants including:

a.    tax filings and strategies;

CLASS ACTION COMPLAINT - 44

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

b.  the execution of all plans to move TelexFree's assets and operations offshore;

c.  drafting the intentionally misleading letter Merrill signed and sent that was used;

d.  to enable pay processing service provider Bank Card Consultants to secure an;

e.  acquiring international bank when the US based options had dried up;

f.  assisting TelexFree keep the $20 million from its TD Bank account banked upon its forced closure; and

g.  leading the strategy and presentation of the TelexFree, Merrill and Wanzeler's 2014 COMSOC investigation defense.

163.  More specifically:

a.  Tober and Sandford planned TelexFree's tax filings and strategies, including its 2013 year-end tax options and methods for reducing taxable income, which substantially assisted TelexFree in retaining its ill-gotten victim funds and enabled its continued operation under the radar of authorities;

b.  attorneys Robert Weaver and Samuel Kauffman of Garvey Schubert addressed issues with the Brazilian investigation and potential U.S. and Spanish regulatory or criminal issues;

c.  attorneys Sara Sandford and Gary Tober, also of Garvey Schubert, were engaged to assist with international expansion, taxation, and regulatory matters;

d.  all Garvey Schubert attorneys dealt with the Brazilian shutdown, the other suspicious activity including account closures and the closure in Brazil, the rejections by financial institutions, and the well-publicized accusations of operating a pyramid scheme and the many other issues surrounding TelexFree's operations and business model;

e.  Sanford used her contacts in the Caribbean to establish TelexFree's foreign base of operations in Grand Cayman; and

CLASS ACTION COMPLAINT - 45

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

f. Garvey Schubert also specialized in "quieting" promoters who made unwanted noise. For example, through fall 2013, with Babener, Garvey Schubert fielded questions from Spanish authorities.

164. On or about September 30, 2013, Babener in consultation with Garvey Schubert provided advice intended to maintain TelexFree's unlawful enterprise and shelter its ill-gotten gains Specifically, they advised TelexFree to legally separate the U.S. market from all other markets and also advised TelexFree to domicile its global parent company and move its assets abroad. In another email on that date, Babener acknowledged that "to my knowledge, TelexFree has taken no steps to comply or customize its contracts in foreign markets to comply with local direct selling and consumer protection laws" despite its continued operations.

165. Garvey Schubert and its individual Defendant lawyers took the lead as critical strategists in structuring TelexFree's international business outlets during fall 2013.

166. On or about October 10, 2013, Craft emailed Sandford seeking advice on which TelexFree entity was the best one to transact their international business. Sandford replied by noting that the Garvey Schubert Attorney Defendants had formulated a recommended structure for TelexFree. Craft, Merrill, Wanzeler, Babener, Tober, and Kauffman were copied on the email.

167. On the same day, Craft forwarded an email to Sandford and Tober regarding offshore accounts. Sandford replied, adding Kauffman to the thread, noting "I just spoke with Sam and he wants to speak with the clients about this before any account transfers occur." Upon information and belief that call went forward with Kauffman providing essential advice.

CLASS ACTION COMPLAINT - 46

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

168.    On or about October 15, 2013, Sandford emailed Merrill, Craft, Babener, Wanzeler, Tober and Kauffman attaching a memo "regarding the corporate aspects of potential liability for TelexFree's U.S. operations in connection with recent developments in Brazil, along with our suggestions for restructuring TelexFree's operations worldwide and a summary of the pros and cons and open issues related to such proposed structure."

169.    On or about October 24, 2013, Sara Sandford emailed Babener asking whether the concerns about the existing illegal program justified starting new entities. In his response, Babener recognized that any new entity would likely have successor liability and so "Biggest protection will be international corp shift." Merrill, Wanzeler, Tober, and Nancy Kikes were copied on Babener's response.

170.    Knowing that TelexFree was operating an illegal pyramid scheme, Garvey Schubert developed a strategy for TelexFree's international expansion. Among other things, the strategy included the use of a separate "financing company" that would process TelexFree's incoming and outgoing investor payments. "The primary purpose" of the "financing company" was expressly to limit "legal and tax exposure in multiple jurisdictions."

171.    Similarly, Tober noted in an email on or about October 29, 2013: If the payment and remittance function is a division within TelexFree and not a separate legal entity, the inquiries of the authorities and any sanctions could be pursued against TelexFree's assets. The financing company provides a tax efficient mechanism to handle payments and remittances

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

and provide a level of protection for the assets of TelexFree. Craft, Merrill, Sandford and Babener were copied on the email.

172.    Sandford and Tober also warned TelexFree against using payment processors that may be subject to U.S. jurisdiction for foreign payments or who would voluntarily comply with U.S. court orders. On November 5, 2013, Tober and Sandford participated in a telephone conference with Merrill, Babener and Craft where they discussed using iPayout for U.S. and foreign transactions. Shortly thereafter, Sandford emailed Merrill noting: Gary and I had one other thought right after we hung up: There may be an issue with using I Payout if you really want to shield foreign revenues from access in the event of some kind of lawsuit in the U.S. That is to say, if the company managing those foreign fund accounts is subject to U.S. jurisdiction (which we understand you said I Payout likely is), they might feel compelled to comply with U.S. court orders, regardless of the location of the accounts themselves. Merrill, Babener, Tober and Wanzeler were copied on the email.

173.    Garvey Schubert also assisted TelexFree's efforts to keep banked $20 million from its TD Bank account upon its closure for fraud issues. Knowing TelexFree was operating an illegal pyramid/Ponzi scheme, Garvey Schubert and Babener assisted Merrill on structuring the withdrawal and subsequent placement of $20 million from a TD Bank account that was shut down for fraud issues to avoid detection and reporting requirements under the BSA/AML. They similarly assisted Merrill in locating other banking outlets in connection with that closure.

CLASS ACTION COMPLAINT - 48

174.    On November 6, 2013, Merrill informed Babener via email that TD Bank had closed TelexFree's account and that Merrill had checks for $20,000,000 from TelexFree's TD Bank accounts. Tober and Sandford assisted Merrill in finding an account for those funds.

175.    In his November 6, 2013 email, Merrill told Babener that he was going to him "with this first" as the team point person regarding TD Bank closing TelexFree's accounts and let him "decide who we need to involve." Merrill informed Babener: "I have checks from TD in the amount of 20 million that I am not sure what to do with I will try and open another account but wanted to get advice from you on how. I can't just walk into a branch with a check for 20 million dollars. Is there a way to get involved with another bank without drawing red flags?" Babener responded by choosing Garvey Schubert's Tober and Sandford and asked them to "weigh in on locating a new bank" and touting that "$20M is not a bad first deposit." (emphasis in original). Merrill informed Babener he would "go bank [sic] to TD bank and ask them to brake [sic] the check into under 5 million so it will be easier to bring in several bank partners as well as some investment partners."

176.    In the same November 6, 2013 email chain, Babener and Sandford endorsed the breaking down of the check, which would help avoid scrutiny.

177.    Despite knowing those accounts would be used for – and were essential to – the continued operation of TelexFree's scheme, Babener, Sandford and Tober engaged in a course of email exchanges on November 7, 2013, to assist Merrill in identifying "possible banks and

CLASS ACTION COMPLAINT - 49

locations for new corporate bank accounts" and on November 8, 2013 "re potential banking options." For example, Sandford emailed recommending Zion Bank in Seattle.

178.    While Sandford worked hard to find contacts at local banks, Babener assisted by again offering to "check for references to banks from colleagues at merchant processors such as pivotal payments or global pay groups like Hyperwallet."

179.    On or about November 8, 2013, Sandford introduced Merrill to a contact at The Commerce Bank of Washington, a bank used by Garvey Schubert, who "may have some ideas about how you address the banking challenges you mentioned." Sandford re-sent this information on November 26, 2013 "per Jim's request" and copied Jack Unbehend of The Commerce Bank of Washington "so he knows to expect to hear from you."

180.    After receiving Sandford and Babener's advice, Merrill asked TD Bank to break up the original $18,448,267.66 check into five or more pieces—each under $5 million. The purpose was twofold: 1. avoid reporting requirements and 2. make it easier to launder those sums through other financial institutions.

181.    On or about November 16, 2013, in consultation with Garvey Schubert, Babener communicated his objection to using a Canadian corporation as TelexFree's international parent company: "[I]f your program were presented to the Competition Branch, counterpart of our FTC, with respect to an advisory opinion as legitimate MLM vs. Pyramid, …..I am quite sure you would be informed that the previous and existing program violates the

CLASS ACTION COMPLAINT - 50                     BRANSTETTER, STRANCH & JENNINGS, PLLC
                                                703 SOUTH 8TH STREET
                                                LAS VEGAS, NV 89101
                                                TELEPHONE: 725-235-9750

Competition Act and is a pyramid." (emphasis added) Merrill, Wanzeler, Nancy Kikes, Sara Sandford, Gary Tober, and Andreia Moreira were copied on the email.

182.    Sandford's follow up advice to the blunt assessment that TelexFree was a pyramid scheme was that legal counsel should look to "match up a 'preferred tax jurisdiction' list with a 'preferred MLM regulatory' list of countries".

183.    In December 2013, Garvey Schubert, in consultation with Babener provided an intentionally misleading letter for Merrill's signature that misrepresented TelexFree's legality for use by MDL Defendant Bank Card Consultants in securing an acquiring bank for its payment processing services. Upon information and belief, MDL Defendant Bank Card Consultants was able to secure an international acquiring bank as a result.

184.    On January 10, 2014, Tober and Sandford participated in a telephone conference with Craft and PwC's Puzey and Colabella regarding the development of TelexFree's international structure. They discussed establishing a new overseas entity that would become TelexFree International, Ltd. PwC proposed that TelexFree LLC transfer its contractual rights to overseas agents and customers to that entity.

185.    On January 31, 2014, Garvey Schubert's Sandford and Tober discussed using Wells Fargo Bank with TelexFree's Joe Craft. Later that day, Sandford conferred with her colleague Weaver regarding potential bank account changes for TelexFree.

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

186.    This phone call occurred soon after the UK TelexFree affiliate TelexFree Ltd. passed a board resolution to move its funds to TelexFree, LLC's Wells Fargo Bank account no. xxxxxx6715 from a Bulgarian bank on January 28, 2014.

187.    In or about early February 2014, Craft conferred with Tober about establishing a bank account for TelexFree in Nevis. Cardenas had previously established a Nevis account for Wanzeler and suggested that one also be established for TelexFree. At Tober's direction, Cardenas opened this account.

188.    Upon information and belief, Merrill utilized the Nevis TelexFree entity to remove funds from U.S. regulatory jurisdiction.

189.    On February 16, 2014, Babener emailed Garvey Schubert attorneys Weaver, Tobey and Sandford stating: "I spoke at length today with Jim and Carlos. They are anxious to move as fast as possible to a scenario where all international reps sign up with a non-US entity located outside the US. Their reasons are liability and asset protection. Obviously, this is the direction of the ultimate structuring. However, my impression is that they would do the tomorrow if they could. And so, they would like the structuring to happen as soon as practicable." These parties then held a teleconference on February 21, 2014 to discuss the above.

190.    The Garvey Schubert Defendants then sped up their formation of an offshore entity to shelter TelexFree's payment processing and illicit gains. From February 25, 2014 to March 3, 2014, Wells, Merrill, Wanzeler, Moreira, Colabella, Puzey, Babener, Tober,

CLASS ACTION COMPLAINT - 52

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

Sandford, and Craft engaged in an email exchange regarding the establishment of a foreign entity for TelexFree in the Cayman Islands which would be named TelexFree International, Ltd., and the opening of a new bank account for this entity. Garvey Schubert and PwC were the leads in this endeavor.

191.    On or about February 28, 2014, with knowledge that the Massachusetts Securities Division was closing in on TelexFree, Sandford emailed her contact at Walkers Global regarding formation of TelexFree's Cayman Islands entity. In the same February 28, 2014 email, Defendant Sandford indicated that TelexFree's Brazilian branch had experienced "some difficulties with regulatory authorities in Brazil," but she nevertheless pressed forward with TelexFree's international expansion.

192.    On or about March 3, 2014, Sandford, after consulting her contact, confirmed that a Grand Cayman entity could be incorporated in a single day, which she described as "quite quickly" once they had information regarding the proposed name and the identities of shareholders and directors.

193.    Also on or about March 3, 2014, Craft, at the direction of Tober, Sandford, Babener, Puzey, and Colabella, asked Wells Fargo Bank and Wells Fargo Advisors' Mauricio Cardenas to establish a bank account for TelexFree in Grand Cayman, under an entity that Sandford would be setting up through her contacts in the Caribbean as the account holder. The specific purpose was to transfer money TelexFree was having a hard time placing and moving money around through various accounts and to move money offshore.

CLASS ACTION COMPLAINT - 53

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

194.    As a result, Cardenas opened domestic accounts for TelexFree with Wells Fargo Bank, and attempted to open international accounts at Wells Fargo Bank in Grand Cayman, which upon information and belief were opened, for purposes of transacting business overseas and concealing funds from U.S. regulators. Through international accounts TelexFree intended to conceal funds derived from promoters in the United States and place them outside the reach of U.S. authorities.

195.    On March 5, 2014 Sandford noted Garvey Schubert's willingness to advance the costs for formation: "Regarding the bill, you may send the bill in care of me and/or bill Garvey Schubert Barer, if you wish, at my address below. We will then charge TelexFree, Inc., because that company asked us to arrange this formation."

196.    By March 6, 2014, TelexFree International Ltd, a Grand Cayman entity, had been formed as a result of Tober, Sandford, Babener, Puzey, and Colabella advice, Sandford's work and Wells Fargo Bank, Wells Fargo Advisors, and Cardenas'' non-routine banking substantial assistance.

197.    Upon information and belief, Merrill utilized the Grand Cayman TelexFree entity to remove funds from U.S. regulatory jurisdiction.

198.    On March 14, 2014, a meeting took place with PwC, Defendant Attorneys Tober and Sandford of Garvey Schubert Barer, and Stuart MacMillan, TelexFree Interim CEO, regarding funding the Grand Cayman company and other items.

CLASS ACTION COMPLAINT - 54                BRANSTETTER, STRANCH & JENNINGS, PLLC
                                           703 SOUTH 8TH STREET
                                           LAS VEGAS, NV 89101
                                           TELEPHONE: 725-235-9750

199.    On March 19, 2014, at the request of James Merrill, Robert Weaver drafted another letter for Babener to send to TelexFree's banking partners, particularly Wells Fargo Bank, to persuade them to continue servicing TelexFree's accounts. Following receipt of that letter, and with the assistance of Cardenas and/or other Wells Fargo employees, Wells Fargo Bank continued to supply services to TelexFree's Scheme during the critical 2014 time period.

200.    On or about March 26, 2014, Sandford forwarded via email documents she had received from Cayman Islands counsel showing Wanzeler, Merrill and Costa were now the sole Officers, Directors, and Shareholders of TelexFree International, Ltd. Wanzeler, Merrill, Colabella, Puzey, Tober, Babener, and Craft were copied on the email.

201.    Tober and Sandford also worked extensively on TelexFree's tax filings and strategies, including its 2013 year-end tax options and methods for reducing taxable income which provided them with further detailed knowledge of TelexFree's fraudulent operations.

202.    The Garvey Schubert Attorneys also worked to prolong TelexFree's scheme by assisting them in evading the notice of regulators and then in reacting to the investigations by governmental authorities.

203.    On or about October 8, 2013, Merrill emailed Sandford and Tober for advice regarding an inquiry TelexFree received from a Spanish police department. This inquiry stemmed from a complaint by an individual seeking reimbursement for money paid to TelexFree.

CLASS ACTION COMPLAINT - 55

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

204.    In response, Babener noted "This turn of events is not a surprise, as I noted earlier, given a Spain connection to South America and Brazil. However, next can come Interpol, FBI, Justice and SEC. I would like Sam [Kaufman] to be the contact person and the we [sic] will work closely with him as you finish a more retail oriented program that he can share before issues spiral the wrong way." Thereafter, Garvey Schubert took action to shut down international inquiries.

205.    On or about October 9, 2013, TelexFree was advised immediately make a complete refund to the individual who instigated the Spanish police department inquiry with "the primary goal … to prevent a broader problem." That same day, as part of Garvey Schubert's strategy to avoid any further investigation of TelexFree's conduct, Kauffman agreed to reach out to the Spanish police department to request more information about their investigation. He did so. That investigation continued through the fall of 2013, with Garvey Schubert fielding questions and providing responses which prevented any further adverse action on the issue.

206.    Notably, on October 10, 2013 Kauffman of Garvey Schubert emailed Detective Torres of the Olot police in Spain to diffuse the fraud investigation and falsely represented that "Telexfree provides VOIP long distance flat fee telecom service throughout the world. At any one time, the company has tens of thousands of customers using its telecom service. The product is marketed through its sales force." Kauffman knew that Telexfree services were not

CLASS ACTION COMPLAINT - 56                  BRANSTETTER, STRANCH & JENNINGS, PLLC
                                             703 SOUTH 8TH STREET
                                             LAS VEGAS, NV 89101
                                             TELEPHONE: 725-235-9750

Voip but purchases of AdCentral packages where promoters cut and paste ads to TelexFree websites.

207.    Garvey Schubert also worked closely with, and shared information with, Babener, as well as Wanzeler and Merrill, in crafting deceptive responses to the SOC's inquiries.

208.    In an email to Weaver on or about April 2, 2014, Babener and Weaver agreed that Garvey Schubert and Greenberg Traurig attorneys should open a civil litigation file for claims from promoters. The lawyer's purpose was clearly stated: "By altering the terms [of the promoter contracts], the company is reneging. However, it has no choice because the old program was illegal." Merrill, Macmillan, Kikes, Wanzeler, Weaver, Conti, Berthiaume (Greenberg Traurig), and Hayeser (Greenberg Traurig) were copied on the email.

209.    On or about April 8, 2014, Weaver emailed Merrill and Wanzeler, cc'ing Babener, Sandford, Conti, Berthiaume (Greenberg Traurig) and Hayeser (Greenberg Traurig) to report that "The lawyers had a telephone meeting this afternoon." In the same email, Weaver outlined that threatened lawsuits by promoters risked their strategy to keep TelexFree out of a criminal prosecution or SEC investigation. Weaver's response was to dedicate another Garvey Schubert Barer Attorney, Pat Conti, to address all complaints and threats of lawsuits from lawyers for promoters. Weaver warned "They need to be dealt with quickly and consistently so as not to provoke complaints to criminal investigative agencies."

CLASS ACTION COMPLAINT - 57                    BRANSTETTER, STRANCH & JENNINGS, PLLC
                                               703 SOUTH 8TH STREET
                                               LAS VEGAS, NV 89101
                                               TELEPHONE: 725-235-9750

210.    In January and February of 2014, Garvey Schubert was lead legal workhorse and strategist, with PwC leading the accounting end, in all aspects of the crafting of misleading responses and the inadvertent submission of a cooked set of books to the Massachusetts SOC that differed from the one Nehra had submitted in the Spring of 2013. While Nehra and TelexFree claimed to have lost the first set of books, the COMSOC had not.

211.    Between September 2013 and April 2014, Garvey Schubert Barer was paid at least $197,528.04 in attorneys' fees by TelexFree. On or about April 11, 2014, TelexFree wired a further $350,000 from TelexFree Financial, Inc's PNC Account to Garvey Schubert as a retainer.

212.    According to TelexFree's bankruptcy filings, Garvey Schubert Barer was paid a total of $532,503.50 by TelexFree between January 22, 2014 and March 6, 2014.

## VI.    CLASS ACTION ALLEGATIONS

213.    Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs sue on their own behalf, and on behalf of all other persons similarly situated ("the Class"). The Class that Plaintiffs seek to represent is:

> All persons residing in the United States who purchased TelexFree AdCentral or AdCentral Family packages and suffered a Net Loss2 during the period from January 1, 2012 to April 16, 2014 (the "Class Period").

214.    Excluded from the Class are Defendants and their officers, directors, and employees; any entity in which any Defendant has a controlling interest; the co-conspirators,

CLASS ACTION COMPLAINT - 58

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

the so-called Top-Level Promoters, legal representatives, attorneys, heirs, and assigns of Defendants.

215.    Plaintiffs meet the requirements of Federal Rules of Civil Procedure 23(a) because the members of the Class are so numerous that the joiner of all members is impractical. "Net Loss" is defined as the class member having invested more funds than they withdrew. While the exact number of Class members is unknown to Plaintiffs, it is in the hundreds of thousands.

216.    Plaintiffs meet the requirements of Federal Rules of Civil Procedure 23(a) because there is a well-defined community of interest among the members of the Class, common questions of law and fact predominate, Plaintiffs' claims are typical of the members of the Class, and Plaintiffs can fairly and adequately represent the interests of the Class.

217.    This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) because it involves questions of law and fact common to the members of the Class that predominate or questions affecting only individual members, including, but not limited to:

    a.  whether the contract under which TelexFree claims to invoke the application of Nevada law is illegal and unenforceable as a matter of law;

    b.  whether TelexFree's claim to invoke the application of Nevada law is enforceable;

    c.  whether TelexFree ran an unlawful Pyramid Scheme or a legitimate business;

    d.  whether TelexFree ran a lawful MLM program or an unlawful pyramid scheme;

CLASS ACTION COMPLAINT - 59

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

e.  whether each Defendant knew that TelexFree was an illegal Pyramid Scheme, yet continued to aid, abet and further such illegal activities or are otherwise liable for the economic loss suffered by the Putative Class;

f.  whether the aid that each Defendant provided was a substantial in the context of aiding and abetting;

g.  was TelexFree a "multi-level distribution company" as defined by Massachusetts General Laws Chapter 93, Section 69(a);

h.  did the standard TelexFree Pre-March 9 Contract contain promises to pay merely for the recruitment of new members in violation of Massachusetts General LawsChapter 93, Section 69(a);

i.  did the standard TelexFree Pre-March 9 Contract contain offers to pay a "finder's fee, bonus, refund, override, commission, cross-commission, dividend or other consideration" to Participants in the TelexFree Program in violation of Massachusetts General Laws Chapter 93, Section 69(a); did the TelexFree Program offer its Members payment without requiring them to engage in any "bona fide and essential supervisory, distributive, selling or soliciting" nor exercise any "judgment," "skill," or "control over the operation in violation of Massachusetts General Laws Chapter 93, Section 69(a); did each of the Financial Services Defendants have actual knowledge of TelexFree's suspicious, tortious or unlawful activities;

j.  when did each of the Financial Services Defendants have actual knowledge of TelexFree's suspicious, tortious or unlawful activities; whether TelexFree's Financial Services Providers, including the aforesaid banking institutions and payment processing services providers aided and abetted TelexFree's Pyramid Scheme; whether TelexFree violated M.G.L. c. 93A;

k.  whether Massachusetts' Blue Sky Laws will apply to the claims of the Putative Class;

l.  whether TelexFree violated M.G.L. c. 110A, § 410 – Massachusetts' Blue Sky Laws;

m.  whether certain Defendants used and employed manipulative and deceptive devices and contrivances in violation of M.G.L. c. 110A, § 410; used means and instrumentalities, directly and indirectly, for the purchase and sale of

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

unregistered securities; and used and employed manipulative and deceptive devices and contrivances in violation of the Massachusetts Uniform Securities Act, M.G.L. c. 110A, § 410(b) and M.G.L. c. 93A;

n.  whether TelexFree mailed fraudulent and inaccurate 1099 (Miscellaneous Income) forms to investors;

o.  whether the 1099 (Miscellaneous Income) forms should be declared void as a matter of law;

p.  whether Defendants' conduct violated any of the articulated Massachusetts state common laws; and

q.  whether Plaintiffs and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

218.  Plaintiffs' claims are typical of those of other Class members because Plaintiffs were defrauded by Defendants' common Scheme.

219.  Plaintiffs will fairly and accurately represent the interests of the Class.

220.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications regarding individual members of the Class, which would establish incompatible standards of conduct for Defendants and would lead to repetitive adjudication of common questions of law and fact.

221.  Class treatment is superior to any other method for adjudicating the controversy. Plaintiffs know of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a class action under Rule 23(b)(3).

CLASS ACTION COMPLAINT - 61                    BRANSTETTER, STRANCH & JENNINGS, PLLC
                                               703 SOUTH 8TH STREET
                                               LAS VEGAS, NV 89101
                                               TELEPHONE: 725-235-9750

222.    Damages for any individual class member likely cannot justify the cost of individual litigation, so that absent class treatment, the Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

223.    Defendants have acted or refused to act on grounds that apply to the Class, as alleged above, and certification is proper under Rule 23(b)(2).

### VII.    FRAUDULENT CONCEALMENT

224.    Throughout the Class Period, Defendants affirmatively and fraudulently concealed their unlawful conduct from Plaintiffs and the Class.

225.    Plaintiffs and the members of the Class did not discover and could not have discovered through the exercise of reasonable diligence that Defendants were violating the laws as alleged herein until TelexFree claimed bankruptcy in April 2014. Nor could Plaintiffs and the members of the Class have discovered the violations earlier than that time because Defendants concealed from Plaintiffs and the Class the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.

226.    As a result of Defendants' fraudulent concealment of their actions, Plaintiffs and the Class assert the tolling of an applicable statute of limitations affecting the rights of action of Plaintiffs and Class members.

CLASS ACTION COMPLAINT - 62                BRANSTETTER, STRANCH & JENNINGS, PLLC
                                          703 SOUTH 8TH STREET
                                          LAS VEGAS, NV 89101
                                          TELEPHONE: 725-235-9750

## VIII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### CIVIL CONSPIRACY
**(Against Foster Garvey P.C., Robert Weaver, Sara P. Sandford)**

227.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

228.    MDL Defendants TelexElectric, LLLP, Telex Mobile, Holdings, Inc., James M. Merrill, Carlos N. Wanzeler, Carlos Roberto Costa, Steven M. Labriola, Joseph H. Craft, Ana Paula Oliveira, Andreia B. Moreira, Katia Wanzeler, The Estate of Jeffrey A. Babener, Gerald P. Nehra, Gerald P. Nehra, Attorney at Law, Nehra and Waak, The Sheffield Group, Inc., Telecom Logic, LLC, Ryan James Mitchell , Fidelity Co-operative Bank, John Merrill, Kevin Staten, International Payout Systems, Inc., Natalia Yenatska, Base Commerce, John Hughes, Dustin Sparman, Allied Wallet, Inc, Ahmad Khawaja, Mohammad Diab, Priority Payout Corp., Thomas A. Wells, and the third party TelexFree entities combined by common design to enter into a sprawling pyramid scheme and money laundering and sheltering civil conspiracy.

229.    Said MDL Defendants and the third party TelexFree entities conspired with each other to operate, maintain, sustain, profit from, expand and maintain a fraudulent Pyramid Scheme including but not limited to money laundering, syphoning and sheltering, in violation of Massachusetts General Laws Chapter 93, Section 69 and Chapter 93A or to further TelexFree's unlawful enterprise including, but not limited to, money laundering, syphoning and sheltering.

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

230.  Said Defendants and the third party TelexFree entities, by agreement or common design, engaged directly in the operation of, or otherwise worked in concert to further the activities of, the unlawful Pyramid Scheme.

231.  As detailed above, Defendant Foster Garvey, Robert Weaver, and Sara P. Sandford, the MDL Defendants, various third parties, and the third party TelexFree entities engaged in a tortious act in furtherance of the agreement or common design to engage in the unlawful Pyramid Scheme.

232.  Said Defendants, MDL Defendants, various third parties, and the third party TelexFree entities conspired with each other, making use of confidential information, and used this confidential information to misappropriate the funds of the Putative Class through the operation and maintenance of the unlawful Pyramid Scheme.

233.  Said Defendants, MDL Defendants, various third parties, and the third party TelexFree entities, for an unlawful purpose and using unlawful means, with the intent of so combining, unlawfully defrauded Plaintiffs and the Putative Class out of funds.

234.  Said Defendants, MDL Defendants, various third parties, and the third party TelexFree entities' conduct constitutes a conspiracy to operate an unlawful enterprise, rendering all Defendants jointly and severally liable for the breaches of each other's obligations.

235.  Said Defendants, MDL Defendants, various third parties, and the third party TelexFree entities substantially assisted the Scheme and each other with actual knowledge of the tortious and illegal nature of the Scheme.

CLASS ACTION COMPLAINT - 64

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

236.    As a direct and proximate cause of said Defendants and the third party TelexFree entities' conspiracy, the Putative Class has and will continue to suffer substantial direct and consequential damages and Plaintiffs demand they and the Putative Class be made whole.

## SECOND CLAIM FOR RELIEF
## TORTIOUS AIDING AND ABETTING
### (Against All Garvey Schubert Defendants)

237.    Plaintiffs incorporate by reference all allegations in all previous paragraphs, as though fully set forth here.

238.    Each Defendant provided substantial assistance or encouragement to the other Defendants in committing the primary causes of action alleged herein and did so with unlawful intent and knowledge that such parties were perpetuating an illegal Pyramid Scheme yet continuing to substantially assist or encourage.

239.    Defendants rendered this substantial assistance despite their knowledge that TelexFree's operations constituted an unlawful, unfair, deceptive and unsustainable Pyramid Scheme and financial fraud.

240.    Such substantial assistance rendered by Defendants despite their knowledge of the illegal nature of TelexFree's operations, is detailed above and includes, but is not limited to:

    a.    providing legal services to TelexFree;

    b.    publicly certifying that TelexFree's business model and operations were legal, proper, and economically viable and sustainable;

CLASS ACTION COMPLAINT - 65

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

c.  providing banking, investment and asset management advice for TelexFree and its management; and

d.  Each and every action taken by the Defendants enumerated above as substantial assistance is explicitly incorporated by reference.

241.  By each Defendant's actions participating in the Pyramid Scheme, as alleged above, each said Defendant aided and abetted the commission of the causes of action alleged herein.

242.  As a direct and proximate result of TelexFree's illegal Pyramid Scheme and all the activities performed in connection therewith, to which Defendants provided substantial assistance, Plaintiffs and the Putative Class sustained damages and losses and demand to be made whole.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment against Defendants as follows:

1.  The Court determine that this action be maintained as a class action under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class;

2.  The unlawful conduct alleged herein be adjudged and decreed an unlawful Pyramid Scheme in violation of Massachusetts General Laws Chapter 93, § 69 and Chapter

CLASS ACTION COMPLAINT - 66

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

93A, §§ 2 and 11 and the contracts with TelexFree and related entities be declared void an that any tax liability against them for alleged income they never received be declared void;

3.      Plaintiffs and the members of the Class recover damages, as provided by law, to the maximum extent allowed under the law, including, without limitations, multiple damages, against Defendants;

4.      Plaintiffs and the members of the Class recover their costs of suit, including reasonable attorneys' fees, as provided by law;

5.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct alleged herein, or from entering into, adopting, or following any practice, plan, program, or device having a similar purpose or effect;

6.      Plaintiffs and the members of the Class be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this complaint; and

7.      Plaintiffs and the members of the Class be granted such other and further relief as the case may require and the Court may deem just and proper.

## X.      DEMAND FOR JURY TRIAL

CLASS ACTION COMPLAINT - 67

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750

Plaintiffs and the Putative Class demand a jury trial of their claims to the extent authorized by law.

Dated: September 16, 2022

Respectfully Submitted by:

*/s/ Nathan R. Ring*
Nathan R. Ring, Esq.
BRANSTETTER, STRANCH
 & JENNINGS, PLLC
Washington Bar No. 46271
703 South 8th Street
Las Vegas, NV 89101
Telephone: 725-235-9750
Email: NateR@bsjfirm.com

J. Gerard Stranch* (TN Bar No. 23045)
Benjamin A. Gastel* (TN Bar No. 28699)
BRANSTETTER, STRANCH
 & JENNINGS, PLLC
223 Rosa L. Parks Ave. Ste 200
Nashville, TN 37203
Telephone: 615-254-8801
Facsimile: 615-255-5419
Email: gerards@bsjfirm.com
Email: beng@bsjfirm.com

Robert J. Bonsignore* (BBO No. 547880)
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest St.
Medford, MA 02155
Telephone: 781-856-7650
Facsimile: 702-983-8672
Email: rbonsignore@classactions.us

*Attorney for Plaintiff*
*\*Pro Hac Vice Forthcoming*

CLASS ACTION COMPLAINT - 68

BRANSTETTER, STRANCH & JENNINGS, PLLC
703 SOUTH 8TH STREET
LAS VEGAS, NV 89101
TELEPHONE: 725-235-9750